UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAYSHON LAMONT MOODY, | Case No. 2:22-cv-1342-DC-JDP (P) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| D. GONZALEZ, *et al.*, | |
| Defendants. | |

Plaintiff Kayshon Lamont Moody is a state prisoner proceeding without counsel in this civil rights action brought under 42 U.S.C. § 1983. In his complaint, he alleges that defendants D. Gonzalez, C. Tuyen, R. Valine, J. Ortega, T. Drake, A. Reilly, A. Humphers, and Jensen, all correctional officers, violated his Eighth Amendment rights by using excessive force against him. ECF No. 1. Defendant Tuyen moves for summary judgment on the claim against him, arguing that he did not use excessive force and that he is entitled to qualified immunity. ECF No. 34. Plaintiff opposes the motion. ECF No. 46. Following review of the record and applicable law, I recommend that Tuyen's motion for summary judgment be granted because he is entitled to qualified immunity.

1

**Motion for Summary Judgment**

### I.     Background

In his complaint, plaintiff alleges that the named defendants used excessive force against him. *See generally* ECF No. 1 at 5-6. Specific to Tuyen, plaintiff alleges that Tuyen excessively sprayed him with a chemical agent. *Id.* at 5.

Plaintiff expanded on his allegations during his deposition, where he testified that the incident occurred on the morning of July 27, 2021. ECF No. 35-1 at 20. Specific to his allegations against Tuyen, he explained that around 7:50 a.m., Tuyen came by plaintiff's cell, which had a glass window on the door. *Id.* at 20-23. He admitted to breaking the glass window due to his ongoing mental health issues, and stated that he did not see Tuyen near the window when he broke it. *Id.* at 25-26. However, as soon as he broke the window, Tuyen sprayed the chemical agent into his cell. *Id.* at 26. He asserted that he did not lunge toward Tuyen when Tuyen walked by his cell that morning. *Id.* at 49, 56. He also denied reaching his arm out of his cell window to grab Tuyen. *Id.* at 50-51, 56-57. He explained that the chemical agent caused his eyes to burn. *Id.* at 52.

Through a declaration, Tuyen explained that on the morning of the incident, he assisted Building 4 staff with cell feedings. ECF No. 34-5 at 2. When he approached plaintiff's cell, he witnessed plaintiff lunge from the toilet seat with an unknown object in his hand, and plaintiff proceeded to break the cell window with the object. *Id.* Tuyen stated that he felt something hit his left eye, and he could no longer open or see out of it. *Id.* Concerned for his safety and unsure about the threat plaintiff potentially posed, Tuyen unholstered his MK-9 Oleoresin Capsicum spray ("OC spray"). *Id.* He believed plaintiff was attempting to reach through the broken window, and the floor was slippery due to the broken glass. *Id.* Tuyen believed he could not safely retreat at the moment due to his eye injury and the slippery floor, so he sprayed plaintiff with a three-second burst of OC spray to subdue plaintiff and protect himself. *Id.* After spraying plaintiff with OC spray, he announced over his radio that he had glass stuck in his eye and needed assistance. *Id.* He was taken to the prison medical clinic and then sent to an outside hospital for further medical care for his eye injury. *Id.* He asserted that he did not spray plaintiff to cause

2

him harm or discomfort, and instead sprayed him out of fear for his own safety. *Id.* He asserted that he reacted to what he believed to be an imminent physical threat to his safety and used the OC spray to stop plaintiff from further escalating the incident. *Id.* at 2-3. This outline of events mirrors the events Tuyen initially reported in his incident report written on the day of the incident. *See* ECF No. 46 at 9.

## II. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computs., Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The same standards apply to both a motion for summary judgment and a motion for summary adjudication. *See* Fed. R. Civ. P. 56(a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing either that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P.

1  56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see
2  also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

3  "The moving party initially bears the burden of proving the absence of a genuine issue of
4  material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the
5  moving party must either produce evidence negating an essential element of the nonmoving
6  party's claim or defense or show that the nonmoving party does not have enough evidence of an
7  essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins.
8  Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this
9  initial burden, the burden then shifts to the non-moving party "to designate specific facts
10 demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d
11 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323). The non-moving party must "show more than
12 the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477
13 U.S. 242, 252 (1986)). However, the non-moving party is not required to establish a material
14 issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to
15 require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec.
16 Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

17 The court must apply standards consistent with Rule 56 to determine whether the moving
18 party has demonstrated there to be no genuine issue of material fact and that judgment is
19 appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).
20 "[A] court ruling on a motion for summary judgment may not engage in credibility
21 determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.
22 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the
23 nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.
24 *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*,
25 198 F.3d 1130, 1134 (9th Cir. 2000).

26         **B.**     **Qualified Immunity & Excessive Force**

27 The qualified immunity analysis involves the consideration of two issues: "(1) whether
28 there has been a violation of a constitutional right; and (2) whether that right was clearly

4

1  established at the time of the officer's alleged misconduct." *Hughes v. Rodriguez*, 31 F.4th 1211,
2  1220 (9th Cir. 2022) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). The Eighth
3  Amendment applies to an inmate's excessive force claim. *Id.* Under this framework, "the
4  relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore
5  discipline, or maliciously and sadistically to cause harm.'" *Id.* at 1221 (quoting *Hudson v.*
6  *McMillian*, 503 U.S. 1, 7 (1992)). "The contrast is clear: an officer who harms an inmate as part
7  of a good-faith effort to maintain security has acted constitutionally, but an officer who harms an
8  inmate for the very purpose of causing harm, has engaged in excessive force, provided that the
9  other elements of excessive force have been met." *Hoard v. Hartman*, 904 F.3d 780, 788 (9th
10 Cir. 2018) (internal quotation marks and citation omitted).

11          After determining whether a constitutional violation occurred, the qualified immunity
12 analysis asks whether the constitutional right identified was clearly established at the time of the
13 alleged misconduct, which means "existing precedent must have placed the . . . constitutional
14 question beyond debate." *Id.* (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). While case
15 law need not be directly on point for a right to be clearly established, clearly established laws
16 cannot be defined at a high level of generality. *Kisela*, 584 U.S. at 104. Plaintiff bears the burden
17 of proving that the right was clearly established at the time of the alleged misconduct. *Clairmont*
18 *v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011).

19          "[V]ery few" Ninth Circuit cases analyze the constitutional limits on the use of pepper
20 spray. *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013). The "law is unclear regarding
21 the parameters of the permissible use of pepper spray to address inmates who disobey or interfere
22 with officers in the performance of their duties." *Xavier v. Tanori*, No. 19-cv-05587-JSW, 2022
23 WL 1240863, at *4 (N.D. Cal. Apr. 27, 2022) (internal quotation marks omitted) (quoting
24 *Jennings v. Hayes*, No. CV-10-8004-PCT-JAT, 2011 WL 1480038, at *9 (D. Ariz. Apr. 19,
25 2011); *see also Brown v. Williams*, No. 09-cv-00792, 2011 WL 386852, at *5 (E.D. Cal. Apr. 8,
26 2011) ("There is little Supreme Court and Ninth Circuit published precedent that addresses the
27 use of chemical agents to maintain prison discipline, let alone the use of chemical agents to
28 establish compliance with a lawful order.") (citations omitted); *Howard v. Nunley*, No. 06-cv-

00191-NVW, 2010 WL 3785536, at *4 (E.D. Cal. Sept. 24, 2010), *aff'd*, 465 F. App'x 669 (9th Cir. 2012) ("Supreme Court and published Ninth Circuit precedent have little to say about the appropriate use of pepper spray or similar agents to enforce prison discipline.").

In 1979, the Ninth Circuit ruled that the use of tear gas in small amounts may be appropriately employed when subduing inmates. *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (holding that the use of tear gas can be a "legitimate means for preventing small disturbances from becoming dangerous to other inmates or the prison personnel"). Additionally, the Ninth Circuit has found no constitutional violation occurred when officers applied two bursts of pepper spray lasting five seconds each into a cell when the officers witnessed inmates fighting within. *See Clement v. Gomez*, 298 F.3d 898, 903-04 (9th Cir. 2002), *but see Furnace*, 705 F.3d at 1029-30 (holding that officers discharging bursts of pepper spray at plaintiff for a minute, resulting in defendant needing to employ a second canister, when plaintiff merely failed to move his hands from the food port, violated the Eighth Amendment).

Many cases involving the use of pepper spray on inmates have been decided based on qualified immunity, reflecting the lack of clearly established law. *See Cotton v. Medina*, No. 22-cv-00568-JLT-EPG, 2025 WL 953268, at *7 (E.D. Cal. Mar. 21, 2025) (granting defendants qualified immunity because it was not clearly established that they could not deploy approximately four tear gas grenade devices into a group of fighting inmates who were surrounded by more than a dozen non-fighting inmates); *Xavier*, 2022 WL 1240863, at *4 (granting defendants qualified immunity because it was not clearly established that defendant could not use pepper spray against an allegedly rowdy inmate); *Jennings*, 2011 WL 1480038, at *9 (granting qualified immunity to defendants who pepper sprayed plaintiff following a disagreement about removing poems from plaintiff's cell).

Notably, however, it does appear clearly established that using "small amounts" of pepper spray is permissible, and quantities "greater than necessary" could violate the Eighth Amendment. *Furnace*, 705 F.3d at 1029-30.

### III.     Analysis

Defendant Tuyen argues that he is entitled to summary judgment because he did not use excessive force and because he is entitled to qualified immunity. ECF No. 34-1 at 4-9. First, he contends that his actions in using the OC spray against plaintiff do not qualify as excessive force because the OC spray was not used to cause plaintiff harm but was instead meant to protect himself and to prevent plaintiff from escalating the situation. *Id.* at 4-7. He also argues that he is entitled to qualified immunity because his use of the OC spray in this circumstance is not clearly unlawful. *Id.* at 7-9.

Plaintiff opposes Tuyen's motion for summary judgment. ECF No. 46. He argues that the use of the OC spray was excessive and states that he does not agree with Tuyen's allegation that he lunged toward Tuyen or put his arm out of the broken window to attack Tuyen. *See generally id.*

Defendant Tuyen's motion for summary judgment should be granted because he is entitled to qualified immunity. Even assuming Tuyen's use of pepper spray violated the Eighth Amendment, plaintiff has not demonstrated that the right was clearly established at the time of the incident. *Kisela*, 584 U.S. at 104. Viewing the record evidence in the light most favorable to plaintiff, on the morning of the incident, plaintiff purposefully busted out the glass window of his cell. *See* ECF No. 35-1 at 20-26. Tuyen, who was near to plaintiff's cell and delivering food, was injured by the broken glass and believed plaintiff was attempting to attack him.[1] *See* ECF No. 34-5 at 2. Glass lodged in Tuyen's eye, causing him to lose sight in that eye, and the floor became unsteady due to the broken glass. *See id.* In an attempt to protect himself, he sprayed three seconds' worth of OC spray into the cell and then called for other officers to assist. *See id.* As the law stands, it is not clearly established that Tuyen could not use a three-second blast of OC spray toward plaintiff when Tuyen believed he was under an imminent threat of harm. *Spain*, 600 F.2d at 195; *compare Clement*, 298 F.3d at 903-04, *with Furnace*, 705 F.3d at 1029-30. Because

---

[1] Plaintiff insists he was not attempting to attack Tuyen, *see* ECF No. 35-1 at 49-51 & 56-57, but the fact remains that Tuyen believed that was what was occurring in that moment, *see* ECF No. 34-5 at 2-3.

the right was not clearly established at the time of the incident, Tuyen is entitled to qualified immunity, and his motion for summary judgment should be granted.

Accordingly, it is RECOMMENDED that:

1. Defendant Tuyen's motion for summary judgment, ECF No. 34, be GRANTED.

2. The Clerk of Court should be directed to enter judgment for defendant Tuyen and administratively terminate him from the docket.

3. The case should proceed on plaintiff's Eighth Amendment excessive force claim against defendants Gonzalez, Valine, Ortega, Drake, Reilly, Humphers, and Jensen.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   June 17, 2025

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

8